# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **LINDA GALE HALL,**  Plaintiff  v.  **NANCY A. BERRYHILL,**  **Acting Commissioner of**  **Social Security,**  Defendant | Civil Action No. 2:17cv00030  **REPORT AND RECOMMENDATION**  By:   PAMELA MEADE SARGENT       United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Linda Gale Hall, ("Hall"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying her claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 *et seq.* (West 2011 & 2018 Supp.). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). Neither party has requested oral argument. This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the

case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Hall protectively filed her application for DIB on June 19, 2013,[1] alleging disability as of September 21, 2012, based on osteoarthritis; herniated disc; carpal tunnel syndrome; depression; fibromyalgia; and difficulty walking due to swelling of her right foot. (Record, ("R."), at 42, 253-54, 272, 304.) The claim was denied initially and upon reconsideration. (R. at 171-73, 177-79, 182-85, 187-89.) Hall then requested a hearing before an administrative law judge, ("ALJ"). (R. at 190-91.) The ALJ held a hearing on March 21, 2016, at which Hall was represented by counsel. (R. at 86-115.)

By decision dated August 23, 2016, the ALJ denied Hall's claim. (R. at 42-59.) The ALJ found that Hall met the nondisability insured status requirements of the Act for DIB purposes through September 30, 2016. (R. at 45.) The ALJ found that Hall had engaged in substantial gainful activity during July 2014 through September 2014, but that there had been a continuous 12-month period during which she did not engage in substantial gainful activity. (R. at 45.) The ALJ found that the medical evidence established that Hall had severe impairments, namely cervical and lumbar degenerative disc disease; carpal tunnel syndrome; chronic obstructive pulmonary disease, ("COPD"); lung cancer; arthritis; and right shoulder rotator cuff tear, but he found that Hall did not have an impairment or

---

[1] Hall previously filed applications for DIB and supplemental security income, ("SSI"), on September 23, 2010, alleging disability as of September 9, 2010. (R. at 42, 122.) By decision dated September 20, 2012, the ALJ denied Hall's claims. (R. at 42, 122-31.) Hall requested review by the Appeals Council, but the Appeals Council denied her request for review. (R. at 133-35.) Therefore, the ALJ's September 20, 2012, decision was the final decision of the Commissioner.

combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 46-47.) The ALJ found that Hall had the residual functional capacity to perform sedentary[2] work that required no more than occasional performance of postural activities and overhead activities; that required no more than frequent reaching, handling and fingering; that required no more than occasional use of foot controls; and that did not require her to work around pulmonary irritants. (R. at 49.) The ALJ found that Hall was unable to perform her past relevant work. (R. at 58.) Based on Hall's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of other jobs existed in the national economy that Hall could perform, including jobs as an addressing clerk, a callout operator and a food checker. (R. at 58-59.) Thus, the ALJ concluded that Hall was not under a disability as defined by the Act, and was not eligible for DIB benefits. (R. at 59.) *See* 20 C.F.R. § 404.1520(g) (2018).

After the ALJ issued his decision, Hall pursued her administrative appeals, (R. at 251), but the Appeals Council denied her request for review. (R. at 1-6.) Hall then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2018). This case is before this court on Hall's motion for summary judgment filed February 5, 2018, and the Commissioner's motion for summary judgment filed March 7, 2018.

---

[2] Sedentary work involves lifting items weighing up to 10 pounds with occasional lifting or carrying of articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. § 404.1567(a) (2018).

*II. Facts & Analysis*

Hall was born in 1966, (R. at 89, 253), which classified her as a "younger person" at the time of her alleged disability onset date and at the time of the ALJ's 2016 decision under 20 C.F.R. § 404.1563(c). As of the date of the ALJ's decision, Hall was three months and five days from qualifying as a "person closely approaching advanced age" under 20 C.F.R. § 404.1563(d). Hall testified that she had an eighth-grade education[3] and past work experience as a certified nursing assistant, ("CNA"), and a companion. (R. at 89-91.)

Mark A. Hileman, a vocational expert, also was present and testified at Hall's hearing. (R. at 106-14.) Hileman classified Hall's past work as a CNA as medium[4] and semi-skilled and as a companion as light[5] and semi-skilled. (R. at 106.) Hileman was asked to consider a hypothetical individual of Hall's age, education and work history, who could perform light work that did not require more than occasional postural activities; who should avoid pulmonary irritants; who could occasionally perform overhead activities and use foot controls; and who could frequently perform reaching, handling and fingering. (R. at 106-07.) Hileman testified that such an individual could perform Hall's past work as a companion, but not as a CNA (R. at 107.) He also stated that the individual could perform other work existing in significant numbers in the national economy,

---

[3] Hall reported on her Disability Report that she completed the tenth grade. (R. at 273.)

[4] Medium work involves lifting items weighing up to 50 pounds and frequently lifting and carrying items weighing up to 25 pounds. If someone can do medium work, she also can do light and sedentary work. *See* 20 C.F.R. § 404.1567(c) (2018).

[5] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, she also can perform sedentary work. *See* 20 C.F.R. § 404.1567(b) (2018).

including jobs as a marker, a cafeteria attendant and a routing clerk. (R. at 107.) Hileman next was asked to consider the same individual, but who could perform sedentary work. (R. at 108.) Hileman testified that this individual could not perform any of Hall's past work, but could perform other work existing in significant numbers in the national economy, including jobs as an addressing clerk, a callout operator and a food checker. (R. at 108.) Hileman stated that there were no transferable skills from Hall's prior work to jobs at the sedentary level. (R. at 108-09.) Next, Hileman was asked to consider the hypothetical individual who was limited to sedentary work, but who would be required to use a cane to change positions two days a week. (R. at 109.) He testified that such an individual could not perform any work. (R. at 109.) He stated that, if the cane was required for walking only, there would be jobs in the light category that such an individual could perform, including jobs as a cashier II, a toll collector and a ticket taker. (R. at 110-11.)

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2018). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 404.1520. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a)(4) (2018).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the

claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2)(A) (West 2011 & 2018 Supp.); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Hall argues that substantial evidence does not exist to support the ALJ's finding that she was not disabled. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 9-17.) In particular, Hall argues that the ALJ erred by failing to find that she suffered from a severe mental impairment. (Plaintiff's Brief at 11-13.) Hall also argues that the ALJ erred by failing to properly evaluate and weigh Dr. Blackwell's opinion. (Plaintiff's Brief at 13-15.) Hall further argues that the ALJ erred by failing to address the issue of borderline age. (Plaintiff's Brief at 15-17.)

I first will address Hall's argument regarding her borderline age. As noted above, the burden rests with the Commissioner at step five of the sequential process to prove by a preponderance of the evidence that the claimant is capable of performing other work that exists in significant numbers in the national economy, taking into account the claimant's residual functional capacity, age, education and work experience. The Commissioner can meet her burden at step five by referencing the Medical-Vocational Guidelines, ("the Grids"), found at 20 C.F.R. Part 404, Subpart P, Appendix 2. The Grids contain four age categories: (1) younger person (under age 50); (2) person closely approaching advanced age (age 50-54); person of advanced age (age 55 or older); and (4) person close to retirement (age 60 or older). *See* 20 C.F.R. § 404.1563 (2018). "An ALJ must consider a claimant's age category from the alleged disability onset date until the date the ALJ announced his decision." *Brown v. Colvin,* 2014 WL 1658751, at *3 (W.D. N.C. Apr. 25, 2014) (citations omitted). In situations where the claimant's age is on the borderline of the higher age category, the Commissioner does not apply the age categories mechanically and may apply the higher category. *See* 20 C.F.R. § 404.1563(b), *see also Pickett v. Astrue*, 895 F. Supp. 2d 720, 724 (E.D. Va. 2012). As the regulations explain:

> If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. § 404.1563(b). Thus, in borderline age situations, the ALJ must decide whether to apply the higher age category or the claimant's actual age category. *See* 20 C.F.R. § 404.1563(b). The Social Security Administration, through the

Hearings, Appeals, and Litigation Law Manual, ("HALLEX"),[6] at Section I-2-2-42, offers guidance for determining whether a borderline age situation exists. To identify borderline age situations when making disability determinations, adjudicators are to apply a two-part test: (1) determine whether the claimant's age is within a few days or a few months of the next higher age category; and (2) determine whether the higher age category would result in a finding of "disabled" instead of "not disabled." If the answer to both questions is "yes," a borderline age situation exists, and the ALJ must decide whether it is more appropriate to use the higher age category or the claimant's chronological age. *See* HALLEX I-2-2-42; *see also, Yates v. Colvin*, 2015 WL 5158739, at *7 (W.D. Va. Sept. 2, 2015). In addition, HALLEX I-2-2-42 requires that the ALJ explain in the decision that he considered the borderline age situation, state whether he applied the higher age category or the chronological age and note the specific factors he considered.

The ALJ in this case stated Hall's birthday in the decision and noted that she was 45 years old, which is defined as a younger person, on the alleged disability onset date. (R. at 58.) The ALJ, however, did not render his decision until August 23, 2016, when Hall was approximately three months and five days from turning 50. (R. at 42-59.) Accordingly, Hall was on the borderline of the age categories between a younger individual and an individual closely approaching advanced age. *See Pickett*, 895 F. Supp. 2d at 724 (holding that an individual three months and twenty-four days from an older age category is of a borderline age); *Brown*, 2014 WL 1658751, at *4 (holding that an individual five months and nine days from an older age category is of borderline age); *Campbell v. Colvin*, 2015 WL 8484457, at *3 (M.D. N.C. Dec. 9, 2015) (holding that an individual slightly less than six

---

[6] HALLEX is available at http://www.ssa.gov/OP_Home/hallex.

months from an older age category is of borderline age). Because Hall was on the borderline between the younger person and the person closely approaching advanced age categories, the ALJ was required to consider whether he should use the older age category in making a determination as to Hall's case. The ALJ's decision, however, is devoid of any discussion as to Hall's borderline age or any explanation as to how the ALJ reached the particular age category determination in this case.

There is a split of authority as to the extent to which an ALJ must acknowledge a borderline age category and explain in the decision how he or she reached the determination to apply the particular category. *See Phillips v. Astrue*, 671 F.3d 699, 705-07 (8th Cir. 2012) (summarizing the decisions of the various circuits and holding that the ALJ must provide some explanation of whether a borderline situation warrants moving a claimant to the next higher age category to allow the courts to review whether substantial evidence supports the Commissioner's decision); *Ash v. Colvin*, 2014 WL 1806771, at * 8 (N.D. W. Va. May 7, 2014) (adopting Report and Recommendation) (summarizing circuit split). Although the Fourth Circuit has not addressed the issue, district courts in this Circuit have regularly found that an ALJ must indicate that he or she considered a claimant's borderline age so that the court can conduct meaningful review. *See, e.g., Arnett v. Berryhill*, 2017 WL 1659060, at *3-4 (W.D. N.C. Apr. 4, 2017); *Tanner v. Colvin*, 2016 WL 626493, at *5-6 (E.D. N.C. Jan. 26, 2016) (adopted by 2016 WL 617431) (E.D. N.C. Feb. 16, 2016)); *Campbell*, 2015 WL 8484457, at * 3-4; *Ash*, 2014 WL 1806771, *8-11; *Brown*, 2014 WL 1658751, at *3-4; *Mitchell v. Astrue*, 2011 WL 5037134, at * 2-3 (W.D. N.C. Oct. 24, 2011); *Pickett*, 895 F. Supp. 2d at 725 (collecting cases). The boilerplate language in a decision stating the claimant's birthday, the claimant's age when he or she filed the

application and a citation to 20 C.F.R. § 406.1563 is insufficient to satisfy the ALJ's requirement to consider a borderline age category. *See Brown*, 2014 WL 1658751, at *3-4; *Mitchell*, 2011 WL 5037134, at *2-3; *but see Williford v. Colvin*, 2015 WL 7730978, at *5 (W.D. N.C. Oct. 28, 2015) (adopted by 2015 WL 7730957 (W.D. N.C. Nov. 30, 2015)); *Horton v. Colvin*, 2014 WL 1316024, at *3-4 (W.D. N.C. Apr. 1, 2014).

The court agrees with those courts that have held that an ALJ must, at a minimum, acknowledge a claimant's borderline age category and provide sufficient reasoning to allow the district court to conduct meaningful review. Here, it is not clear from the ALJ's decision whether the ALJ even recognized Hall's borderline age situation at the time of the decision, much less whether he considered applying the next higher age category. And the boilerplate language in the ALJ's decision that the Commissioner relies upon is insufficient to satisfy the ALJ's obligation to address a claimant's borderline age in a manner that would allow this court to conduct meaningful review of the ALJ's decision. As the Eighth Circuit explained in *Phillips*:

> To this end, we agree with the Commissioner that detailed findings in borderline situations are not necessary. However, it is this court's job to review whether substantial evidence exists to support the Commissioner's decision, and we simply cannot complete this review without some showing as to the Commissioner's consideration of applying the higher age category, which he indisputably is required to do.

671 F.3d at 706 (citations omitted). While the ALJ need not engage in an exhaustive legal discussion as to why he applied one age category over another, the record must, at a minimum, reflect that the ALJ recognized Hall's borderline age,

that the ALJ considered applying the next higher age category and state some basis for why he did not apply that category. The ALJ's decision in this case is devoid of this information.

The ALJ stated that, if Hall had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed by Rule 201.19 of the Grids. (R. at 58.) Grid Rule 201.19 states that a younger individual who has the residual functional capacity to perform sedentary work with a limited education or less is not disabled. *See* Grid Rule 201.19, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (2018). However, if the ALJ would have found that Hall was a person closely approaching advanced age, she would have been found disabled under Grid Rule 201.10 if her job skills were not transferable. *See* Grid Rule 201.10, 20 C.F.R. Pt. 404, Subpt. P, App. 2. Grid Rule 201.10 states that an individual closely approaching advanced age is disabled if the individual (1) has a limited or less education; (2) has skilled or semi-skilled previous work experience, but the skills are not transferable; and (3) has a maximum sustained work capability limited to sedentary work. *See* Grid Rule 201.10, 20 C.F.R. Pt. 404, Subpt. P, App. 2. The ALJ found that Hall was limited to performing sedentary work; therefore, she was unable to perform her past relevant work. (R. at 49, 58.) Although the ALJ did not make a finding as to the transferability of Hall's job skills, (R. at 58), the vocational expert testified at her hearing that there were no transferable skills from Hall's prior work to jobs at the sedentary level. (R. at 108-09.) Consequently, had the ALJ considered Hall's age as a "person closely approaching advanced age," as opposed to a "younger person," the Grids would have dictated a finding of "disabled." *See* Grid Rule 201.10, 20 C.F.R. Pt. 404, Subpt. P, App. 2.

Because the record is devoid of any evidence that the ALJ recognized Hall's borderline age category or considered whether to apply the nearing "closely approaching advanced age" category to Hall, remand is required in this case.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. The ALJ did not properly consider Hall as being of borderline age and whether her chronological age or the next higher age category should be used in determining disability; and

2. Substantial evidence does not exist in the record to support the Commissioner's finding that Hall was not disabled under the Act.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Hall's motion for summary judgment; deny the Commissioner's motion for summary judgment; vacate the Commissioner's decision denying benefits; and remand the case to the Commissioner for further consideration.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2018):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:   February 12, 2019.

s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE